# OTIS v. INGOLDSBY.

# INGOLDSBY v. OTIS.

PATENTS; CLAIMS AND SPECIFICATIONS; REISSUE.

1. It is not the object of U. S. Rev. Stat. sec. 4916, U. S. Comp. Stat. 1901, p. 3393, relating to the reissue of patents, to encourage or permit the insertion of claims in a reissue application which involve an impracticable mode of operation, or which are obviously inserted for the sole purpose or appropriating claims of other inventors.

2. A patent will not be reissued for the mere purpose of enlarging a claim, unless there has been a clear mistake, inadvertently committed, in the wording of the claim. If the description in the reissue application finds no real support in the original application, a case for reissue is not made.

Nos. 627 and 628.   Patent Appeals.   Submitted March 9, 1910.   Decided April 5, 1910.

HEARING on appeals in an interference proceeding from a decision of the Commissioner of Patents, finding for one of the parties as to certain of the issues and for the other party as to the other issues.   *Affirmed in part and reversed in part.*

The facts are stated in the opinion.

*Messrs. Sheridan, Wilkinson, Scott & Richmond* for Otis.

*Messrs. Bates, Fouts, & Hull* and *Mr. S. E. Fouts* for Ingoldsby and Bowling.

Mr. Justice ROBB delivered the opinion of the Court:

Appeals from the decision of the Commissioner of Patents in an interference proceeding in which four of the five counts

involved were awarded Spencer Otis and one claim was awarded the joint applicants, Frank S. Ingoldsby and Joseph R. Bowling.

The invention in issue is a dump car, and is set forth in the following counts:

"1. In a dump car, the combination of a dumping door, means for closing the door, means for holding the door closed, and means for returning the door-closing means to initial position without operating the door, substantially as described.

"2. In a dump car, the combination of a door pivotally mounted in the car so as to open automatically when released, means for closing the door, means for holding the door closed, and means for returning the door-closing means to initial position without operating the door, substantially as described.

"3. In a dump car, the combination of a dumping door, gear mechanism for operating such door, provided with means for releasing the door to permit it to swing open independently thereof, means for connecting such gear mechanism with the door, and means for supporting the swinging side of the door in closed position, independently of the gear mechanism, substantially as described.

"4. In a dump car, the combination of a dumping door, gear mechanism for operating such door, movable into releasing position while the door is stationary in its closed position, means for supporting the swinging side of the door in closed position during the movement of such gear mechanism to releasing position, and means for releasing the swinging side of the door from such supporting mechanism, substantially as described.

"5. In a dump car, the combination of a plurality of dumping doors, mechanism for operating such doors, movable into releasing position while the doors are stationary in closed position, means for supporting the swinging sides of the doors independently of such operating mechanism, and locking rod mechanism for locking and releasing such supporting mechanism, substantially as described."

Ingoldsby and Bowling's application was filed March 6th, 1906, and was the reissue of their patent No. 784,265, granted

March 7th, 1905, upon an original application filed December 21st, 1903. Otis filed his application September 3d, 1904, and on November 21st, 1905, was granted patent No. 804,970. From this it appears that the joint applicants' original application and the application upon which Otis was granted a patent were copending. After the grant of the Otis patent, Ingoldsby and Bowling filed their application for reissue. In this application they inserted certain amendments to the descriptive matter of the original application, and copied the claims of the Otis patent.

It is contended by Otis that the invention in issue was not shown, described, or claimed in the original application of his adversaries, and that therefore the reissue application constitutes new matter; in short, that Ingoldsby and Bowling have no right to make the claims of the issue.

Neither side took testimony. The Examiner of Interferences sustained the view of the Primary Examiner, that the joint applicants have the right to make the claims, but did not discuss the meaning of the issue or the disclosure upon which he based his decision. The Examiners in Chief, in an elaborate and, to our mind, convincing opinion, awarded all the claims to Otis. Their opinion concludes as follows: "For the above reasons, we do not think that the counts, when given their ordinary meaning, are readable upon the Ingoldsby and Bowling construction as originally described, and especially when viewed in the light of the Otis application. Therefore Otis, the patentee and the party originally advancing the claims, is entitled to an award of priority in view of the fact that his rival has no basis in his case to support the issue." The Commissioner sustained the decision of the Examiners in Chief as to all save count 4, which he awarded to Ingoldsby and Bowling upon the following grounds: "Count 4 specifies that the mechanism for operating the doors is 'movable into releasing position,' while the doors are stationary in closed position. The door-operating mechanism of the Ingoldsby and Bowling device is movable into releasing position while the doors are stationary, for when the gear wheel is thrown out of mesh with the pinion,

the bell crank levers could be moved by hand to their initial position, even if their weight is not such that they will fall by gravity. For these reasons it must be held that Ingoldsby and Bowling are entitled to make a claim corresponding to this count."

The reasoning of the Board of Examiners in Chief and of the Commissioner as to four of the counts is so satisfactory that we do not deem it necessary to add anything thereto. A careful examination of the record convinces us that until Ingoldsby and Bowling saw Otis's patent, the subject-matter of these claims had never occurred to them; and that the structure described in their patent was not designed to operate, and would not in fact operate, in the manner described in the claims of the issue.

In the structure of both parties the downwardly opening doors of a car forming a car floor are hinged adjacent to the center of the car. These doors are provided with means for holding them closed, which means must, of course, sustain not only the doors, but the load thereon. Means are also provided for closing the doors after a load has been released through the agency of a locking means. In the Ingoldsby and Bowling structure the means whereby the doors are closed consist of bell crank levers pivoted near the center, the upper ends of which being fastened to chains passing around a shaft upon which is mounted a gear wheel. The gear wheel normally meshes with a manually operated pinion. The journals of the gear wheel are so arranged that at one movement of a lever the wheel is thrown out of mesh with the pinion. This prevents, according to their original application, the "rotation of the crank at the time when the doors are dropped," thereby protecting the operator.

The Examiners in Chief and the Commissioner found, and we concur in the finding, that there is no reference in the original Ingoldsby and Bowling application to the relative size and weight of the bell crank levers, and that the original specification fails of the suggestion that they were intended to fall to the position they assume when the doors are open prior to the release of the doors. The Board of Examiners in Chief dis-

posed of count 4 as follows: "Count 4 includes gear mechanism for operating the door, movable into releasing position while the door is stationary in its closed position. The gear mechanism of the joint applicants is not movable into releasing position except as to a part thereof." The Commissioner, however, as above noted, ruled that because "the bell crank levers could be moved by hand," Ingoldsby and Bowling are entitled to make that claim. We are unable to concur in this view. It is not the object of sec. 4916, Rev. Stat., U. S. Comp. Stat. 1901, p. 3393, relating to the reissue of a patent, to encourage or permit the insertion of claims in the reissue application which involve an impracticable mode of operation, or which are obviously inserted for the sole purpose of appropriating claims of other inventors. The law does not permit a patent to be reissued for the mere purpose of enlarging a claim unless there has been a clear mistake, inadvertently committed, in the wording of a claim. If the description in the reissue application finds no real support in the original application, a case for reissue is not made. *Steward* v. *American Lava Co.* decided by the Supreme Court of the United States November 29th, 1909 (215 U. S. 161, 54 L. ed. 139, 30 Sup. Ct. Rep. 40); *Coon* v. *Wilson,* 113 U. S. 268, 28 L. ed. 963, 5 Sup. Ct. Rep. 537. This claim in the Otis application referred to a device capable of automatic operation. The device of Ingoldsby and Bowling, to respond to the issue, requires that a man should crawl under the car and manipulate it. This fact of itself is sufficient to negative the contention that their original application furnishes any substantial basis for the claim. To award this claim to Ingoldsby and Bowling we would be compelled to give it a forced and unreasonable construction, and one inconsistent with the construction which would naturally be placed upon the claim as it appears in the Otis application, from which it was taken.

The decision of the Commissioner of Patents is therefore affirmed as to counts 1, 2, 3, and 5, and reversed as to count 4. The clerk will certify this opinion as by law required.

*Affirmed in part and reversed in part.*